UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN ROBERTS,

    Plaintiff,

v.

DELTA COUNTY PROSECUTOR'S OFFICE; TROOPER JOHN BOLOGNA; PROSECUTOR LAUREN WICKMAN; and MICHIGAN STATE POLICE,

    Defendants.

No. 2:19-cv-00023

HON. GORDON J. QUIST

---

| | |
|---|---|
| Lisa C. Walinske (P62136)<br>Attorney for Plaintiff<br>Detroit East Community Law Center<br>30600 N. River Rd.<br>Harrison Twp., MI 48045<br>(313) 461-8440<br>lwalinske@redetroiteast.com | John G. Fedynsky (P65232)<br>Assistant Attorneys General<br>Attorney for Defendants Belonga and Michigan State Police<br>Michigan Dep't of Attorney General<br>Complex Litigation Division<br>P.O. Box 30736<br>Lansing, MI  48909<br>(517) 335-3055<br>fedynskyj@michigan.gov<br><br>Gregory R. Grant (P68808)<br>Attorney for Defendant Delta County Prosecutor's Office and Wickman<br>310 W. Front St., Ste. 221<br>Traverse City, MI 49684<br>(231) 922-1888<br>ggrant@cmda-law.com |

---

**BRIEF IN SUPPORT OF DEFENDANTS MICHIGAN STATE POLICE AND TROOPER JOHN BELONGA'S MOTION TO DISMISS**

# CONCISE STATEMENT OF ISSUES PRESENTED

1. Is the Michigan State Police entitled to Eleventh Amendment immunity?

2. Is Trooper Belonga entitled to qualified immunity?

3. Does the complaint otherwise fail to state a claim?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY
*Authority*:

*Abick v. Michigan*,
   803 F.2d 874 (6th Cir. 1986) .................................................................... 4
*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................ 3
*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................ 3
*Burwell v. Hobby Lobby Stores, Inc.*,
   573 U.S. 682 (2014) ................................................................................ 8
*County of Sacramento v. Lewis*,
   523 U.S. 833 (1998) ................................................................................ 7
*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*,
   648 F.3d 365 (6th Cir. 2011) .................................................................... 8
*Estelle v. Gamble*,
   429 U.S. 97 (1976) .................................................................................. 9
*Graham v. Connor*,
   490 U.S. 386 (1989) ................................................................................ 7
*Harrison v. Michigan*,
   722 F.3d 768 (6th Cir. 2013) .................................................................... 4
*Pearson v. Callahan*,
   555 U.S. 223 (2009) ................................................................................ 5
*Quern v. Jordan*,
   440 U.S. 332 (1979) ................................................................................ 4
*Saucier v. Katz*,
   533 U.S. 194 (2001) ................................................................................ 5
*Siegert v. Gilley*,
   500 U.S. 226 (1991) ................................................................................ 5
*Thaddeus-X v. Blatter*,
   175 F.3d 378 (6th Cir. 1999) .................................................................... 8
*United States v. Gaubert*,
   499 U.S. 315 (1991) ................................................................................ 3
*Will v. Michigan Dep't of State Police*,
   491 U.S. 58 (1989) .................................................................................. 5

## STATEMENT OF FACTS

**The traffic stop and investigation of John Roberts did not violate any clearly established rights.**

The prosecutor Co-Defendants have moved for similar relief and describe the complaint as "a disorganized collection of a mostly nonsensical recitation of facts that fail to state a claim upon which relief can be granted." (R. 14, Co-Defs' Br. in Supp., at 1.) Defendants agree.[1] Accordingly, a detailed recitation of the facts is not warranted. An overview of Roberts's complaint and the facts of his criminal case demonstrate he has failed to state a claim for relief against Defendants.[2]

The complaint does not appear to challenge the validity of Trooper Belonga's traffic stop of Roberts, which occurred in Delta County on September 6, 2016. (Compl. ¶¶ 7, 10-11.) Roberts instead appears to take issue with the stop "because he was detained at a traffic stop without reasonable suspicion, placed on an unconstitutional bond restriction and then because he exercised his constitutional rights to question authority he was then charged with a crime that does not exist in the State of Michigan." (Compl. ¶ 2.)

Roberts admitted during the traffic stop that he did not have a valid driver's license. (*Id.* ¶ 14.) The purpose of his trip was to give some cannabis oil to a man in Mackinaw City and then drive home to Ontonagon. (*Id.*)

---

[1] Unless otherwise indicated, "Defendants" shall refer to the moving Defendants here, MSP and Belonga.

[2] To the extent that any of the Co-Defendants' arguments apply, Defendants adopt and incorporate by reference Co-Defendants' motion to dismiss, concur in the relief requested, and request the same relief. Fed. R. Civ. P. 10(c).

1

The complaint is otherwise bereft of any details concerning the alleged misconduct of Trooper Belonga or MSP.  It also provides no details about the prosecution of Roberts.  For the reasons stated below, the complaint cannot overcome applicable immunity doctrines and otherwise fails to state a claim for relief.

**The complaint asserts a hodgepodge of constitutional violations.**

Roberts brings the following counts:

Count 1.  Fourth Amendment Unlawful Detention

Count 2.  Fourth Amendment Unlawful Seizure of Personal Property

Count 3.  First Amendment Retaliation

Count 4.  First Amendment Free Exercise of Religion

Count 5.  Fourteenth Amendment Due Process

Count 6.  Fourth and Fourteenth Amendment Malicious Prosecution

Count 7.  Substantive Due Process and Equal Protection

Count 8.  Eight Amendment violations

Roberts seeks money damages, as well as costs and attorney fees.  (Compl. at 13.)

## STANDARD OF REVIEW

In a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), this Court must accept as true the allegations of the complaint and then determine whether the statements are sufficient to make out a right of relief. *United States v. Gaubert*, 499 U.S. 315, 327 (1991). However, although it must accept well-pled facts as true, the Court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). In evaluating the sufficiency of a plaintiff's pleadings, this Court may make reasonable inferences in the non-moving party's favor, "but [this Court is] not required to draw [p]laintiffs' inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, conclusory allegations are "not entitled to be assumed true." *Iqbal*, 556 U.S. at 681.

A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. *See Iqbal*, 556 U.S. at 679 (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561–62, 570 (2007) (retiring the prior "unless it appears beyond doubt that the plaintiff can prove no set of facts" standard). In *Twombly,* the Supreme Court emphasized a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555. Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations and quotations omitted).

3

In *Iqbal*, the Supreme Court reiterated that although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  556 U.S. at 678.  A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss.  *Id*.  The well-pled allegations must nudge the claim "across the line from conceivable to plausible. . . ."  *Twombly*, 550 U.S. at 570.

## ARGUMENT

### I.  MSP is entitled to Eleventh Amendment immunity.

The Eleventh Amendment bars suits against a state, its agencies, and its officials sued in their official capacities for damages unless the state has waived its sovereign immunity or unequivocally consented to be sued. *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013) (collecting cases). "It is well established that § 1983 does not abrogate the Eleventh Amendment, and that Michigan has not consented to the filing of a civil rights suit against it in federal court." *Harrison*, 722 F.3d at 771 (internal citations omitted); *see also Quern v. Jordan*, 440 U.S. 332, 341 (1979); *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).

Additionally, federal courts have long held that the state itself is the actual defendant when a plaintiff sues a state officer in his or her official capacity.  *Will v.*

4

*Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  Because no exception to Eleventh Amendment immunity applies here, the Court should dismiss all claims against MSP and all official capacity claims against Trooper Belonga.

### II.     Trooper Belonga is entitled to qualified immunity.

The doctrine of qualified immunity is not merely a defense to liability but also a shield for public officials against the burdens of litigation and trial.  *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) (collecting cases).  "Accordingly, 'we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  *Pearson*, 555 U.S. at 231 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).  Qualified immunity is designed to "spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit."  *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

Qualified immunity analysis consists of two distinct inquiries.  *Saucier v. Katz*, 533 U.S. 194 (2001).  Typically, a court must determine whether, taken in a light most favorable to the plaintiff, the facts alleged demonstrate that the officer violated a constitutional right.  *Saucier*, 533 U.S. at 201.  If the court determines that a constitutional deprivation has been properly alleged, it must determine whether the right was clearly established as viewed within the specific context of the facts of the case.  *Saucier*, 533 U.S. 194.  The Supreme Court held that this order of inquiry is not mandatory, allowing courts "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be

5

addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

Apart from conclusory legal assertions, the complaint fails to assert that Trooper Belonga violated any clearly established constitutional rights. The validity of the traffic stop does not appear to be at issue. There is not even an allegation that Trooper Belonga arrested Roberts without probable cause. No details are provided about the length of the stop, and whether that was unreasonable under the circumstances or otherwise violated clearly established law. The same is true for any alleged seizure of evidence. In all likelihood, such matters would have been raised in any criminal proceedings, where the trooper's sole involvement would be in the role of investigating officer. He would have had no control over bond conditions, charging decisions, or other post traffic stop matters that occurred under different authority. Additionally, a driver without a valid license can reasonably expect a lengthy stop, as it would be illegal to drive away from the scene at the conclusion of the stop and any related initial investigation.

In short, Trooper Belonga is entitled to qualified immunity because Roberts has not met his burden of pleading in avoidance of that threshold legal defense. The allegations, even if true, fail to avoid generic labels that would bring this case into the realm of plausible claim for relief under *Iqbal*, *Twombly*, and subsequent case law. Accordingly, this Court should dismiss all claims against Trooper Belonga.

6

### III. The complaint otherwise fails to state a claim.

Roberts's mishmash of constitutional claims is fatally flawed on the face of the complaint. His allegations, even if true, fail to rise to the level of a substantive due process violation. "Protection against governmental arbitrariness is the core of . . . substantive due process . . . but only the most egregious executive action can be said to be 'arbitrary' in the constitutional sense[.]" *County of Sacramento v. Lewis*, 523 U.S. 833, 834 (1998) (citations omitted) "[T]he cognizable level of executive abuse of power is that which shocks the conscience[.]" *Id.* (citations omitted). A road-side traffic stop with garden-variety claims of Fourth Amendment violations fall far short of this standard. The allegations in the complaint simply fail to rise to the level of conscience-shocking.

Additionally, the allegations in the complaint cluster under the Fourth Amendment, which explicitly addresses the types of violations alleged –unlawful detention, unreasonable seizure, etc. The nature of the trooper's official duties also fall primarily under the rubric of the Fourth Amendment. The United States Supreme Court has instructed courts to not analyze such claims under different constitutional provisions. "Today we . . . hold that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original). "Because the Fourth Amendment provides an explicit

7

textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Id*. Accordingly, the intrusive conduct alleged in the complaint must fall under the Fourth Amendment and not an unrecognized concept of substantive due process.

For the same reasons, Roberts does not have an equal protection claim under the Fourteenth Amendment. "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment . . . burdens a fundamental right, targets a suspect class, or has no rational basis." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (citations and internal quotation marks omitted). Roberts fails to allege any manner of disparate treatment, suspect class, or other threshold requirement for an equal protection claim. Accordingly, any such claim should be dismissed with prejudice.

The same is true for the First and Eighth Amendment claims. There is not even a whisper of a factual basis for the claims that a traffic stop and criminal investigation somehow constituted unlawful retaliation against expression or the free exercise of religion. *See, e.g., Thaddeus-X v. Blatter*, 175 F.3d 378, 386-387 (6th Cir. 1999); *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693-696 (2014). Similarly, there is no basis for any Eighth Amendment claim for cruel and unusual punishment, deliberate indifference to a serious medical need, or otherwise. Roberts was at no point serving a custodial sentence and therefore would not

8

qualify for any relief under the Eighth Amendment. *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

Finally, for the reasons already stated, any residual Fourth Amendment claims cannot overcome applicable qualified immunity.

## CONCLUSION AND RELIEF REQUESTED

This lawsuit is like a handful of darts thrown at a target. Some of the claims miss the mark entirely. Others run into the protective shield of the Eleventh Amendment and qualified immunity. None of the darts stick and hit their mark.

Defendants respectfully request that the Court (1) grant Eleventh Amendment immunity to MSP, (2) grant qualified immunity to Trooper Belonga, (3) find that Plaintiff otherwise fails to state a claim, and (4) grant any other appropriate relief.

Respectfully submitted,

Dana Nessel
Attorney General


*/s/ John Fedynsky*
Assistant Attorney General
Attorney for Defendants Belonga
and MSP
Complex Litigation Division
P.O. Box 30736
Lansing, MI 48909
(517) 335-3055
fedynskyj@michigan.gov
P65232

Dated: May 2, 2019

9

## CERTIFICATE OF SERVICE

      I hereby certify that on May 2, 2019, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

                                        */s/ John Fedynsky*
                                        Assistant Attorney General
                                        Attorney for Defendants Belonga
                                        and MSP
                                        Complex Litigation Division
                                        P.O. Box 30736
                                        Lansing, MI 48909
                                        (517) 335-3055
                                        fedynskyj@michigan.gov
                                        P65232