UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHN ROBERTS,

        Plaintiff,

v.                                            Case No. 2:19-CV-23

JON DOE DELTA COUNTY                        HON. GORDON J. QUIST
PROSECUTOR, et al.,

        Defendants.

_____/

## OPINION REGARDING MOTIONS TO DISMISS

### I. Procedural OVERVIEW

On January 26, 2019, Plaintiff, John Roberts, filed a complaint against the Delta County
Prosecutor's Office, Michigan State Police Trooper Belonga,[1] Prosecutor Lauren Wickman, and
the Michigan State Police (MSP), alleging a number of claims pursuant to 42 U.S.C. § 1983 and,
arguably, a state-law malicious prosecution claim. Roberts's claims arose out of a September 16,
2016, traffic stop of Roberts by Trooper Belonga and a subsequent criminal prosecution by Delta
County.

On March 19, 2019, Defendants Prosecutor's Office and Wickman filed a motion to
dismiss pursuant to Fed. R. Civ. P. 12(b)(6) arguing that the Prosecutor's Office is not a legal
entity capable of being sued and that Wickman, as a prosecutor, is entitled to absolute prosecutorial
immunity or, alternatively, qualified immunity on Roberts's federal-law claims and governmental
immunity on Roberts's state-law claim. (ECF No. 14.) Roberts responded on April 9, 2019. (ECF

---

[1] The complaint erroneously named Trooper Belonga as Trooper Bologna.

No. 18.)  Although Roberts did not file a motion to amend, he attached a proposed amended complaint to his response.  On April 23, 2019, the Prosecutor's Office and Wickman replied, arguing that Roberts's new allegations in his proposed amended complaint do not suffice to avoid dismissal.  (ECF No. 19.)

On May 2, 2019, the MSP and Trooper Belonga moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that Roberts's claims against the MSP and Trooper Belonga in his official capacity are barred by the Eleventh Amendment, that Trooper Belonga is entitled to qualified immunity, and that the complaint otherwise fails to state a claim.  In response, on May 17, 2019, Roberts filed his first amended complaint.  (ECF No. 25.)  On May 23, 2019, the Prosecutor's Office and Wickman filed a motion to strike the first amended complaint, arguing that Roberts filed the first amended complaint too late to qualify as an amendment as of right (at least as to the Prosecutor's Office and Wickman), and Roberts had not obtained written consent or leave from the Court before filing his amended pleading.  (ECF No. 26.)  On May 30, 2019, Roberts filed a motion to amend (ECF No. 29), as well as a response to the Prosecutor's Office and Wickman's motion to strike (ECF No. 30), arguing that the Court should grant his motion to amend.  The Prosecutor's Office and Wickman responded to Robert's motion to amend on June 11, 2019 (ECF No. 34), arguing that the amendment is futile.

Finally, on June 3, 2019, the MSP and Trooper Belonga filed a motion to dismiss the first amended complaint.  (ECF No. 31.)  Roberts has responded to the motion (ECF No. 38), and the MSP and Trooper Belonga have replied (ECF No. 39.)

Given the existing procedural quagmire—with Roberts' first amended complaint being effective as to the MSP and Trooper Belonga but not as to the Prosecutor's Office and Wickman, and the MSP and Trooper Belonga moving for dismissal of the first amended complaint and the

Prosecutor's Office and Wickman opposing Roberts's motion to amend—the Court will grant Roberts's motion to amend and consider his first amended complaint the operative pleading. In addition to deciding the MSP and Trooper Belonga's motion to dismiss, the Court will treat the Prosecutor's Office and Wickman's opposition to the motion for leave to amend on the ground of futility, together with their motion and supporting briefs to dismiss the original complaint, as their motion to dismiss the first amended complaint.

For the following reasons, the Court will grant both motions to dismiss and dismiss Roberts's first amended complaint with prejudice.[2]

## II. MOTION STANDARD

Pursuant to Federal Rule of Civil 8(a), a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Detailed factual allegations are not required, but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' required more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957)). The court must accept all of the plaintiff's factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Although the plausibility standard is not equivalent to a "'probability

---

[2] Although Roberts and the Prosecutor's Office and Wickman have requested oral argument, the Court finds that the briefs adequately develop the issues and oral argument is unnecessary.

requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). "[W]here the well-pleaded facts do not permit the court to infer more than a sheer possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

In general, in deciding a Rule 12(b)(6) motion to dismiss the court is limited to considering only the pleadings. *See Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011) (noting that "Rule 12(b)(6) scrutiny is limited to the pleadings"). However, without converting the motion to one for summary judgment under Rule 56, a court may also consider "any exhibits attached [to the Complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). Thus, in addition to Roberts's factual allegations in the amended complaint, the Court may also consider the dashboard video from the camera on Trooper Belonga's patrol cruiser of the September 16, 2016 traffic stop—as Roberts refers to the video in the first amended complaint and the traffic stop is central to Roberts's complaint—and the transcripts of the December 8, 2016 preliminary examination and the February 3, 2017, circuit court motion hearing—as they are public records of court proceedings. *See Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2009).

### III. Facts

The following facts are taken from Roberts's first amended complaint, Trooper Belonga's dash camera video, and the state-court transcripts.

On September 6, 2016, at approximately 6:20 p.m., Trooper Belonga was parked in his patrol car in the parking lot of a church on U.S. Highway 2 in downtown Rapid River, Michigan. The road at that point is four lanes, with a left-hand passing lane in each direction. As Trooper Belonga observed traffic, he noticed three vehicles traveling close together in the left-hand passing lane, including a silver sedan and a silver van. None of the vehicles was passing a vehicle in the right-hand lane or making a left-hand turn. Trooper Belonga pulled out of the church and initiated a stop of the silver sedan for driving in the passing lane.

Roberts was driving the silver sedan, which was registered to the Oklevueha Native American Church (ONAC). Trooper Belonga approached the passenger side of the vehicle as Roberts was attempting to exit the driver's side door. Roberts told Trooper Belonga that he had been following the silver van. Trooper Belonga asked Roberts if he would be willing to go back to Trooper Belonga's patrol car while Trooper Belonga checked everything out. Roberts agreed to go to Trooper Belonga's car. Soon after Roberts exited his vehicle, he told Trooper Belonga that his license had been suspended, and Roberts volunteered that he had been raided three times for providing cannabis oil. Roberts said that he did not have a medical marijuana card but he was using the ONAC card. Roberts retrieved his ONAC card from his vehicle to show Trooper Belonga, and he began to tell Trooper Belonga about making cannabis oil.

Roberts got into Trooper Belonga's patrol car and Trooper Belonga proceeded to question Roberts. Trooper Belonga asked Roberts for permission to search the vehicle, and Roberts consented to the search. Trooper Belonga's partner, Trooper Lajimodiere, searched the vehicle and found two bottles of oil in the trunk. Trooper Lajimodiere also found a syringe with "Simpson oil" underneath the front passenger seat. Trooper Belonga field tested the liquids in the bottles and one of them tested positive for marijuana. Roberts told Trooper Belonga that it takes a large

amount of marijuana to produce concentrated oil. Trooper Belonga took that oil and told Roberts that he would be doing a report. Roberts was released at the conclusion of the stop.

Roberts was subsequently charged in Delta County with possession with intent to deliver a controlled substance, a four-year felony. M.C.L. § 333.7401(2)(c). On December 8, 2016, District Judge Steven C. Parks conducted a preliminary examination to determine whether there was probable cause to bind Roberts over for further proceedings in the circuit court. The prosecutor presented testimony from Trooper Belonga regarding the stop of Roberts; the search of his vehicle; the field test results showing that the oil contained marijuana; and Roberts's admissions that the items belonged to him, that he had intended to deliver them to a woman in Mackinaw City, and that he created them. Roberts's counsel cross-examined Trooper Belonga on these issues. At the conclusion of the hearing, Judge Parks found probable cause for bind-over to circuit court. (ECF No. 32-3 at PageID.257.)

On February 3, 2017, Delta County Circuit Court Judge John B. Economopoulos held a hearing on two motions that Roberts filed. The first motion concerned the validity of the traffic stop, and the second motion requested amendment of Roberts's bond conditions to permit him to use marijuana for medicinal purposes. As to the first motion, Trooper Belonga testified about the circumstances surrounding the stop and was cross-examined by Robert's counsel. At the conclusion of the hearing, Judge Economopoulos found that "Trooper Belonga did have probable cause to believe that the defendant violated a traffic law and therefore the decision to stop the automobile under those circumstances was lawful and reasonable." (ECF No. 32-5 at PageID.289.) Before turning to the bond motion, Judge Economopoulos dismissed Trooper Belonga, noting that "this issue doesn't involve you." (*Id.*) Judge Economopoulos then heard argument from Wickman and Roberts's counsel regarding the merits of the bond conditions motion

and, for a number of reasons, including that Roberts did not currently have medical marijuana privileges under the Michigan Medical Marijuana Act (MMMA) and had a prior marijuana-related misdemeanor conviction, denied Roberts's motion to amend bond. (*Id.* at PageID.302.)

Subsequently, after Roberts filed "more Motions to Dismiss and only after approximately three hours of oral argument, when the Court was at the cusp of dismissing the action . . . Delta county agreed to dismiss the charges." (ECF No. 25 at PageID.138.)

## IV. DISCUSSION

As mentioned above, the Court considers Roberts's first amended complaint (ECF No. 25) the operative pleading and, therefore, will grant Roberts's motion to amend and deny the Prosecutor's Office and Wickman's motion to strike.

In addition to adding new claims, the first amended complaint drops the Prosecutor's Office and adds "Jon [sic] Doe Delta County Prosecutor" and "John Doe Michigan State Trooper Supervisor" as Defendants. Although Roberts omits the MSP from the caption, because the first amended complaint continues to refer to the MSP, the Court will address the propriety of Roberts's claims directed at the MSP.

### A. The MSP and Trooper Belonga's Motion to Dismiss

#### 1. *Eleventh Amendment*

To the extent the MSP remains a Defendant in the first amended complaint, Roberts's claims against the MSP are barred by Eleventh Amendment immunity. It is well established that the MSP is an agency of the State of Michigan and is thus protected by sovereign immunity. *Lavrack v. City of Oak Park*, No. 98-1142, 1999 WL 801562, at *2 (6th Cir. Sept. 28, 1999); *see also Stewart v. Muskegon Heights Police Dep't*, No. 1:12-CV-718, 2012 WL 4501256, at *2 (W.D. Mich. Sept. 28, 2012) (holding that a claim against the Michigan State Police Forensic Science

Division was bared by the Eleventh Amendment); *Scott v. Michigan*, 173 F. Supp. 2d 708, 714 (E.D. Mich. 2001) (finding the Michigan State Police Department is an arm of the State of Michigan entitled to Eleventh Amendment immunity); *Haddad v. Fromson*, 154 F. Supp. 2d 1085, 1091 (W.D. Mich. 2001) (explaining that the Michigan State Police is a department of the State of Michigan "created by statute," and is thus entitled to Eleventh Amendment immunity) (citing M.C.L. § 16.250), *overruled on other grounds by Lapides v. Bd of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 122 S. Ct. 1640 (2002). Moreover, the Supreme Court has held that "a State is not a person within the meaning of § 1983." *Will v. Mich. Dep't of State Police*. 491 U.S. 58, 64, 109 S. Ct. 2304 2308 (1989); *see also Lavrack*, 1999 WL 801562, at *2 (stating that the Michigan State Police "is not a 'person' for purposes of § 1983") (citing *Howlett v. Rose*, 496 U.S. 356, 383, 110 S. Ct. 2430, 2447 (1990)).

Likewise, Roberts's claims against Trooper Belonga in his official capacity are barred by the Eleventh amendment. As the Supreme Court stated in *Will*, "a suit against a state official in his or her capacity is not a suit against the official but rather is a suit against the officer's office." 491 U.S. at 71, 109 S. Ct. at 2312 (citing *Brandon v. Holt*, 469 U.S. 464, 471, 105 S. Ct. 873, 877 (1985)). "As such, it is no different from a suit against the State itself." *Id.*

### 2. John Doe Michigan State Trooper Supervisor

Roberts's claim against newly-added Defendant John Doe, Michigan State Trooper Supervisor is subject to dismissal as well. The only allegation pertaining to this John Doe Defendant is as follows: "The Michigan State Police employ supervisors within their ranks for various troopers. John Doe Michigan State Trooper Supervisor was Defendant Belonga' [sic] supervisor at all times relevant to this Complaint." (ECF No. 25 at PageID.134.)

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability in claims under § 1983. *Iqbal*, 566 U.S. at 676, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691, 90 S. Ct. 2018, 2036 (1978). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight* , 532 F.3d 567, 575–76 (6th Cir. 2008. The acts of one's subordinates are not enough; nor can supervisory liability be based on the mere failure to act. *Id.* at 576; *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Here, Roberts alleges nothing more than John Doe was Trooper Belonga's supervisor.

In his response to the MSP and Trooper Belonga's motion, Roberts states that John Doe is actually Trooper Lajimodiere, whom transcripts and police reports show as the other arresting/supervising officer. Roberts states that he intends to add Trooper Lajimodiere through amendment, if one is allowed. (ECF No. 38 at PageID.344.) Amendment will not be allowed. First, "[t]he Sixth Circuit strongly disfavors requesting leave to amend pleadings in responsive briefs to motions to dismiss, as opposed to filing a separate, detailed motion to amend." *Rossi v. SunTrust Mortg., Inc.*, No. 3:11-cv-01045, at *7 (M.D. Tenn. Dec. 29, 2011) (citing *Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 785 (6th Cir. 2000)). Second, adding Trooper Lajimodiere to the complaint would serve no purpose. As noted above, Roberts does not allege that the John Doe supervisor actively engaged in any unconstitutional conduct. Absent a basis for individual liability, any suit against Trooper Lajimodiere would be a suit against the State, barred by the Eleventh Amendment. Finally, Roberts simply has no basis for a claim against Trooper Lajimodiere in his individual capacity. As noted above, Trooper Lajimodiere showed up on the scene after Trooper Belonga had obtained consent from Roberts to search his vehicle. "A search by police . . . does not violate the Fourth Amendment if 'voluntary consent has been obtained,

9

either from the individual whose property is searched . . . or from a third party who possesses common authority over the premises.'" *Harajli v. Huron Twp.*, 365 F.3d 501, 506 (6th Cir. 2004) (quoting *Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S. Ct. 2793, 2797 (1990)). Given Roberts's consent to the search, Roberts has no viable claim against Trooper Lajimodiere.

### 3. Trooper Belonga

In his original complaint, Roberts alleged the following claims: (1) unlawful detention under the Fourth Amendment based on the traffic stop (Count One); (2) unlawful seizure of the cannabis oil under the Fourth Amendment (Count Two); (3) First Amendment retaliation based on free exercise of religion (Count Three); (4) violation of Roberts's First Amendment right to freedom of religion (Count Four); (5) violation of Fourteenth Amendment right to due process (Count Five); (6) malicious prosecution (apparently under state law) (Count Six); (7) violation of substantive due process (Count Seven); and (8) Eighth Amendment violation (Count Eight). In his first amended complaint, Roberts added the following claims: (1) violation of the Michigan Persons with Disabilities Civil Rights Act (PWDCRA), specifically, M.C.L. § 37.1402 (Count Nine); (2) violation of the Equal Protection Clause and 42 U.S.C. § 1981(Count Ten); (3) First Amendment retaliation (Count Eleven); (4) malicious prosecution in violation of the Fourteenth Amendment (Count Twelve); and (5) deliberately indifferent policies, practices, customs, training, and supervision in violation of the Fourth, Fourteenth, and First Amendments and 42 U.S.C. § 1981 (Count Thirteen).

Roberts is correct that Eleventh Amendment immunity does not apply to claims asserted against individual state actors in their individual capacities. *See Foulks v. Ohio Dep't of Rehab. & Corr.*, 713 F.2d 1229, 1233 (6th Cir. 1983). And, Roberts alleges that he is suing Trooper Belonga in his individual capacity. (ECF No. 25 at PageID.134.) Nonetheless, Trooper Belonga

moves for dismissal of these claims on the basis of qualified immunity and because Roberts fails to state viable claims. Roberts's claims fail for these and other reasons.

### a. Roberts Has Abandoned Most of His Claims

First, fairly read, the only two claims that Roberts specifically addresses in his response to the MSP's and Trooper Belonga's motion are his claims for malicious prosecution and improper seizure. Moreover, as to those claims, it is not entirely clear whether Roberts intends to address his § 1983 malicious prosecution claim, his state-law malicious prosecution claim, or both, as he fails to cite Sixth Circuit or Michigan case law discussing the elements of such claims. In any event, giving Roberts the benefit of the doubt, the Court will address malicious prosecution under both § 1983 and Michigan law. In addition, as for the illegal seizure claim, although Roberts provides essentially no analysis of the claim, the Court will address it on the merits. As to all other claims—those as to which Roberts fails to mention, let alone provide any substantive analysis— the Court deems them abandoned. [3] *See Ullmo v. Ohio Turnpike & Infrastructure Comm'n*, 126 F. Supp. 3d 910, (N.D. Ohio 2015) (deeming "abandoned" claims as to which the plaintiff failed to respond to the defendant's arguments); *Bazinski v. JPMorgan Chase Bank, N.A.*, No. 13-14337, 2014 WL 1405253, at *2 (E.D. Mich. Apr. 11, 2014) ("Claims left to stand undefended against a motion to dismiss are deemed abandoned."). [4]

---

[3] In one section, captioned "Mr. Robert's [sic] Rights Were Violated by Defendants and Defendants Should Be Held Accountable," Roberts discusses his and the ONAC's religious beliefs and use of medicinal marijuana for healing purposes. Roberts fails to articulate how such discussion supports his First Amendment-based claims. Roberts fails to cite a single case in that section explaining how Trooper Belonga's seizure of the cannabis oil, with probable cause, violated Roberts's First Amendment rights to freely exercise his religion or why such rights would trump the existence of probable cause.

[4] Even if Roberts had not abandoned most of his claims, the Court would conclude that they fail on the merits for various reasons. By way of example: (1) to the extent Roberts claims that the traffic stop was unlawful, he is estopped from relitigating the issue because he had a full and fair opportunity to litigate the issue in state court, the issue was actually litigated in the criminal case, and Roberts fails to allege (and the dash camera video and transcripts of the state-court hearing refute) that Trooper Belonga made material false statements about the facts underlying the traffic stop, *see Spencer v. Cty. of Huron*, 717 F. App'x 555, 557–58 (6th Cir. 2017) (applying Michigan law of collateral estoppel); (2) Roberts's allegations of retaliation are based on nothing more than unsupported conclusions without any basis to infer that Trooper Belonga engaged in retaliatory conduct, particularly when the traffic stop was valid

### b. Roberts Fails to Establish Malicious Prosecution Under Federal and State Law

As noted, Roberts argues that his malicious prosecution claim should not be dismissed. Although Roberts omits any discussion of his malicious prosecution claim under either federal or state law, the Court will analyze the claim under both laws.

In the Sixth Circuit, a malicious prosecution claim arises under the Fourth Amendment. *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010). The elements of such claim are: "(1) a criminal prosecution was initiated against the plaintiff, and the defendant made[,] influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty, as understood under Fourth Amendment jurisprudence, apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor." *Sanders v. Jones* , 845 F.3d 721, 728 (6th Cir. 2017) (citing *Sykes*, 625 F.3d at 309–10).

Roberts's § 1983 claim fails because he cannot show lack of probable cause for the criminal prosecution. Federal courts must "give preclusive effect to state-court judgments whenever the courts of the State from which the judgment emerged would do so." *Haring v. Prosise* , 462 U.S. 306, 313, 103 S. Ct. 2368, 2373 (1983) (quoting *Allen v. McCurry*, 449 U.S. 90, 96, 101 S. Ct.

---

and Trooper Belonga's seizure of the cannabis oil was supported by probable cause; (3) Roberts alleges no facts supporting a procedural due process claim, he does not allege conduct by Trooper Belonga that "shocks the conscience" for purposes of a substantive due process claim, *see Puckett v. Lexington-Fayette Urban Cty. Gov't*, 566 F. App'x 462, 472 (6th Cir. 2014), and reliance on "the more generalized notion of substantive due process" is unwarranted because all of the interests that Roberts asserts are "protected under an 'explicit textual source of constitutional protection'" *id.* (citing *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871 (1989)); (4) any claim based on Roberts's bond conditions or the imposition of a bond condition prohibiting Roberts from using marijuana while on bond fails as to Trooper Belonga because Roberts alleges no fact indicating that Trooper Belonga had anything to do with imposing Roberts's bond conditions; (5) Roberts's Eighth Amendment claim fails because that amendment applies only to convicted prisoners, *see Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002), and Roberts admits that the charge against him was dismissed before trial; (6) Roberts has no claim under § 1981 as discrimination on the basis of religion is not actionable under the statute, *Saint Francis Coll. V. Al-Khazraji*, 481 U.S. 604, 613, 107 S. Ct. 2022, 2028 (1987); *Runyon v. McCrary*, 427 U.S. 160, 167–68, 96 S. Ct. 2586, 2593 (1976); and (7) the provision that Roberts cites in support of his PWDCRA claim, M.C.L. § 37.1402, pertains to prohibited practices in educational institutions.

411, 415 (1980)).  The Sixth Circuit has held that "[w]here a party has had a full and fair opportunity to litigate an issue in earlier state proceedings, he is precluded from relitigating the same issue in a later federal case."  *Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir. 1987) (internal quotation marks omitted), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869, 874 (6th Cir. 2001).  In *Coogan*, the court held that because the plaintiff had contested the issue of probable cause at his preliminary examination and had the right to call witnesses and cross-examine the state's witnesses, the plaintiff was foreclosed from relitigating probable cause in a subsequent § 1983 action.  *Id.*

Under Michigan law, collateral estoppel applies when (1) there is an identity of parties across the proceedings, (2) there was a valid, final judgment in the first proceeding, (3) the same issue was actually litigated and necessarily determined in the first proceeding, and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.  *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001) (citing *People v. Gates*, 434 Mich. 146, 154–57, 452 N.W.2d 627, 630–31 (1990)).  Michigan courts have applied collateral estoppel to bar relitigation of an issue in a civil case that was determined in a prior criminal trial.  *See Webb v. City of Taylor*, No. 236153, 2002 WL 31947931, at *4 (Mich. Ct. App. Dec. 3, 2002).  Moreover, Michigan courts have held that mutuality is not required when collateral estoppel is used defensively.  *Monat v. State Farm Ins. Co.*, 469 Mich. 679, 691–92, 677 N.W.2d 843, 850 (2004).

In the instant case, all of the requirements of collateral estoppel, or issue preclusion, are met with regard to probable cause.  That is, following an evidentiary hearing, District Judge Parks found that probable cause supported the drug charge; the issue of probable cause was actually litigated and necessarily determined in the criminal case; and Roberts had a full and fair

opportunity to litigate the issue by cross-examining the prosecution's witness, Trooper Belonga, and calling his own witnesses, had his counsel decided to do so.

The Sixth Circuit has held that a state-court probable cause determination at a preliminary examination is not always preclusive. That is, "[t]o the extent that a plaintiff in a § 1983 cause of action can point to instances where the consideration of falsehoods or the omission of material exculpatory evidence could have colored a state-court judge's probable-cause determination, there is no requirement that the initial finding be given preclusive effect in the federal-court action." *Autrey v. Stair*, 512 F. App'x 572, 579 (6th Cir. 2013); *see also Harcz v. Boucher*, 763 F. App'x 536, 544 (6th Cir. 2019) ("[A] prior probable cause finding does not prevent a plaintiff from relitigating probable cause where the plaintiff claims that the witness who testified at the state proceeding misstated or knowingly misrepresented facts used to establish probable cause." (citing *Darrah*, 255 F.3d at 311)). The Court notes that Roberts alleges that he was prosecuted "for the known to be false allegations of delivery or manufacturing of a controlled substance," (ECF No. 25 at PageID.156), but such allegation is conclusory and unsupported by factual content. Roberts does not allege that Trooper Belonga misstated facts or testified falsely during the preliminary examination and, based on its review of the dash camera video and the hearing transcript, the Court is unable to discern that Trooper Belonga made a false or misleading statement during the preliminary examination. In fact, Roberts concedes that the cannabis oil that Trooper Belonga seized contained marijuana and that he had previously delivered some oil to a woman in Mackinaw City. Instead, Roberts's false charge allegation is based on his assertion that he had an affirmative defense to the charge under § 8 of the MMMA. But this argument misapprehends the nature of probable cause. Section 8 of the MMMA provides an affirmative defense to criminal prosecution, and "if a defendant raises a § 8 defense, there are no material

questions of fact, and the defendant 'shows the elements listed in subsection (a),' then the defendant is entitled to dismissal of the charges following the evidentiary hearing." *People v. Kolanek*, 491 Mich. 382, 412, 817 N.W.2d 528, 545 (2012) (quoting M.C.L. § 333.26428(b)). Roberts concedes that he told Trooper Belonga that he did not have a valid MMMA card, and, having concluded that the cannabis oil tested positive for marijuana, Trooper Belonga had probable cause; he was not required to delve into whether Roberts had an affirmative defense under § 8 of the MMMA:

> [I]t is clear that a police officer is not required to inquire into facts and circumstances in an effort to discover if the suspect has an affirmative defense. The officer may not ignore information which becomes available in the course of routine investigations, but it is not a routine part of the prearrest investigation for police officers to inquire into affirmative defenses.

*Fridley v. Horrighs*, 291 F.3d 867, 873 (6th Cir. 2002); *see also Harvey v. Carr*, 616 F. App'x 826, 829 (6th Cir. 2015) (noting that officers need not "conduct pre-arrest quasi-trials whenever an investigative target asserts a purported legal excuse for his actions") (internal quotation marks and brackets omitted). In fact, the affirmative defense set forth in § 8 of the MMMA—which requires proof of several facts—is not the type of affirmative defense that would be clearly and readily apparent to an officer during a routine traffic stop. *See* M.C.L. § 333.36428(a)(1)–(3). That Roberts was ultimately able to establish a § 8 affirmative defense after an evidentiary hearing does not negate the state court's finding of probable cause. *See Johnson v. Williams*, No. 14-12790, 2016 WL 11472646, at *5 (E.D. Mich. Feb. 23, 2016) (concluding that while the fact that the plaintiff was in possession of an application and a physician's certification "might be relevant to an affirmative defense under § 8 of the Act, M.C.L. § 333.26428, it does not immunize an individual who does not meet the requirements of § 4 from arrest, prosecution, or search"), *report and recommendation adopted*, 2016 WL 1425706.

Roberts's § 1983 malicious prosecution claim against Trooper Belonga fails for another reason: the first amended complaint does not allege that Trooper Belonga made, influenced, or participated in the decision to initiate the prosecution. During the preliminary examination, Trooper Belonga testified that he did a report and sent it to the prosecutor. (ECF No. 32-3 at PageID.252.) Such conduct will not give rise to liability on a § 1983 malicious prosecution claim. Sixth Circuit law is "absolutely clear . . . that an officer will not be deemed to have commenced a criminal proceeding against a person when the claim is predicated on the mere fact that the officer turned over to the prosecution the officer's *truthful* materials." *Sykes*, 625 F.3d at 314 (italics added). Here, nothing in the first amended complaint or the other materials suggests that Trooper Belonga did anything other than turning over his apparently truthful report to the prosecutor. Such is not a basis for liability. *See Sampson v. Vill. Of Mackinaw City*, 685 F. App'x 407, 417–18 (6th Cir. 2017).

Under Michigan law, to succeed on a malicious prosecution claim, a plaintiff must prove that:

> (1) the defendant has initiated a criminal prosecution against him, (2) the criminal proceedings terminated in his favor, (3) the private person who initiated or maintained the prosecution lacked probable cause for his actions, and (4) the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice.

*Miller v. Sanilac Cty.*, 606 F.3d 240, 248 (6th Cir. 2010) (quoting *Walsh v. Taylor*, 263 Mich. App. 618, 633–34, 689 N.W.2d 506, 516–17 (2004)). In Michigan, "[d]ue to the important state policy of encouraging citizens to report possible criminal violations within their knowledge, a defendant cannot be held liable for malicious prosecution unless he took some active role in instigating the prosecution." *Rivers v. Ex-Cell-O Corp.*, 100 Mich. App. 824, 832–33, 300 N.W.2d 420, 424

(1980). There can be no liability if the defendant "made full and fair disclosure of all of the material facts within his knowledge to the prosecutor, and the prosecuting attorney recommends a warrant." *Id.* at 833, 300 N.W.2d at 424. In such case, the defendant "has not 'instituted' the charge." *Id.* (quoting *Renda v. Int'l Union, UAW*, 366 Mich. 58, 83–87, 114 N.W. 343, 355–56 (1962)). Thus, private individuals and police officers can be liable "only if they knowingly furnish false information that the prosecutor relies and acts upon in initiating criminal proceedings." *Disney v. City of Dearborn*, No. 2:06-CV-12795, 2006 WL 2193029, at *4 (E.D. Mich. Aug. 2, 2006) (citing *Matthews v. Blue Cross & Blue Shield of Mich.*, 456 Mich. 365, 385–90, 572 N.W.2d 603, 613–15 (1998)).

Roberts's state-law malicious prosecution claim fails for the same reason as his § 1983 malicious prosecution claim. That is, he is estopped from relitigating the prior state-court probable cause determination. Moreover, Roberts alleges no fact showing that Trooper Belonga failed to make full and fair disclosure of all the material facts within his knowledge to the prosecutor.

### c.     Roberts's Unlawful Seizure Claim Fails

In Count Two, Roberts alleges that Trooper Belonga violated his Fourth Amendment right to be free of unreasonable seizures by seizing the cannibis oil during the traffic stop. "In general, like seizures of the person, seizures of personal property require probable cause." *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 543 (6th Cir. 2002). As with the malicious prosecution claims, the state-court's prior determination of probable cause precludes Roberts from relitigating the issue in federal court. Accordingly, this claim fails.

### d.     Trooper Belonga is Entitled to Qualified Immunity

Trooper Belonga argues that he is entitled to qualified immunity on Roberts's claims. The Court agrees.

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)).  Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 2083 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987)).  The analysis entails a two-step inquiry.  *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).  First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 815–16 (1982).  Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232, 129 S. Ct. at 816).  A court may address these steps in any order.  *Id.* (citing *Pearson*, 555 U.S. at 236, 129 S. Ct. at 818).  Thus, an officer is entitled to qualified immunity if either step of the analysis is not satisfied.  *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

Roberts fails to show that Trooper Belonga violated Roberts's clearly established rights. "A government official will be liable for the violation of a constitutional right only if the right was clearly established . . . in light of the specific context of the case." *Hearring v. Sliwowski*, 712 F.3d 275, 279 (6th Cir. 2013) (internal quotation marks omitted).  Roberts's central argument, as the Court understands it, is that, although Roberts told Trooper Belonga that he did not possess a

valid card under § 4 of the MMMA, Trooper Belonga lacked probable cause to seize the cannabis oil because Roberts had a valid defense under § 8 of the MMMA and because the cannabis oil was part of his religious practice as a member of the ONAC. Roberts cites no case that would have put a reasonable police officer in Trooper Belonga's position at the time he made the traffic stop on notice that he lacked probable cause to seize the cannabis oil, which tested positive for marijuana. *Cf. United States v. Barnes*, 677 F. App'x 271, 276–77 (6th Cir. 2017) (holding that the Controlled Substances Act did not substantially burden the defendant's religious practice as a member of the ONAC faith for purposes of the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb *et seq.*). Accordingly, Roberts's claims against Trooper Belonga are barred by qualified immunity.

## B. Prosecutor Wickman and John Doe Prosecutor

### 1. Prosecutor Wickman

In moving to dismiss, Wickman argued that she is entitled to absolute prosecutorial immunity as to all of Roberts's federal- and state-law claims. The Court agrees.

Prosecutors are entitled to absolute immunity for their actions in prosecuting criminal conduct. The Supreme Court embraces a functional approach to determining whether a prosecutor is entitled to absolute immunity. *Kalina v. Fletcher*, 522 U.S. 118, 127, 118 S. Ct. 502, 508 (1997); *Burns v. Reed*, 500 U.S. 478, 486, 111 S. Ct. 1934, 1939 (1991); *accord Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010); *Lomaz v. Hennosy*, 151 F.3d 493, 497 (6th Cir. 1998). Under a functional analysis, a prosecutor is absolutely immune when performing the traditional functions of an advocate. *Kalina*, 522 U.S. at 130, 118 S. Ct. at 509; *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003). The Supreme Court has held that a prosecutor is absolutely immune for the initiation and pursuit of a criminal prosecution. *Imbler v. Pachtman*, 424 U.S. 409, 431, 96 S. Ct. 984, 995 (1976); *Lomaz*, 151 F.3d at 497. Acts which occur in the course of the prosecutor's role

as advocate are entitled to protection of absolute immunity, in contrast to investigatory or administrative functions that are normally performed by a detective or police officer, which are not accorded absolute immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 276–78, 113 S. Ct. 2606, 2615, 2617 (1993); *Grant v. Hollenbach*, 870 F.2d 1135, 1137 (6th Cir. 1989). In the Sixth Circuit, the focus of the inquiry is how closely related the prosecutor's conduct is to her role as an advocate intimately associated with the judicial phase of the criminal process. *Spurlock*, 330 F.3d at 797; *Ireland v. Tunis*, 113 F.3d 1435, 1443 (6th Cir. 1997).

Roberts's allegations in this first amended complaint, scant as they are, show that at all times Wickman was acting in her role as an advocate prosecuting a criminal case. Roberts attempts to avoid absolute immunity by alleging that Wickman "performed the administrative task of giving faulty legal advice to the Court and the Police Defendants," (ECF No. 25 at PageID.136) and arguing in his response to Wickman's motion that in proposing bond restrictions, Wickman was "operating as [a] medical practitioner[]." (ECF No. 18 at PageID.79.) Roberts fails to avoid absolute immunity. There is no factual support in the first amended complaint supporting Roberts's conclusory allegation that Wickman gave legal advice to Trooper Belonga (or any other law enforcement officer), and the assertion that Wickman gave legal advice to the court is a mischaracterization of Wickman acting in her role as an advocate. And, Robert's "medical practitioner" argument is absurd. In arguing for, and opposing Roberts's motion to modify his bond conditions, Wickman was acting as an advocate. *See Ghaith v. Rauschenberger*, 493 F. App'x 731, 739 n.4 (6th Cir. 2012) (stating that conduct of "appearing at a bond hearing and arguing against a reduction in bond . . . would be shielded by absolute prosecutorial immunity . . . since [the prosecutors] were acting as advocates").

Finally, because "Michigan standards for prosecutorial immunity are the same as federal standards," *West Mich. Film LLC v. Metz*, No. 319119, 2015 WL 404933, at *4 (Mich. Ct. App. Jan. 29, 2015) (citing *Bischoff v. Calhoun Cty. Prosecutor*, 173 Mich. App. 802, 807–08, 434 N.W.2d 249, 251–52 (1988)), absolute immunity bars Roberts's state-law claims against Wickman.

### 2. John Doe Delta County Prosecutor

Roberts alleges that John Doe Delta County Prosecutor was the elected Prosecutor of Delta County at the time of the offense was committed and that Roberts is suing this Defendant in his official and personal capacity. Roberts alleges that "John Doe Elected Prosecutor and Prosecutor Wickman . . . pressed charges against Plaintiff's [sic] Roberts that do not exist under Michigan law." (ECF No. 25 at PageID.136.) To the extent that Roberts alleges that the Delta County Prosecutor was involved in prosecuting Roberts, Roberts's claims are barred by absolute immunity. If, on the other hand, Roberts intended to name the Delta County Prosecutor as the policymaker for the Delta County Prosecutor's Office for purposes of asserting a claim pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S. Ct. 2018 (1978), his allegations are wholly conclusory, as they fail to allege any specific policy, practice, or custom that violated Roberts's constitutional rights. *See Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 372–73 (6th Cir. 2011) (stating that "vague and conclusory allegations and arguments" are insufficient to establish the existence of a policy); *Taylor v. Stuck*, No. 11-15683, 2012 WL 1048643, at *4 (E.D. Mich. Mar. 28, 2012) ("To survive the City's Motion to Dismiss, Plaintiff must allege more than the conclusory legal statement that the City's 'policy, practice, and customs' caused Plaintiff injury."). Moreover, to the extent that the alleged policy pertains to bond conditions, in Michigan it is for the court, not the prosecutor, to determine what

bond conditions are "reasonably necessary." Mich. Ct. R. 6.106(D). Accordingly, any policy or custom of the prosecutor's office could not have violated Roberts's constitutional rights.

## V. CONCLUSION

For the foregoing reasons, the Court will grant Roberts's motion to amend; deny Wickman's and the Prosecutor's Office motion to strike; grant Trooper Belonga and the MSP's motion to dismiss; and, treating Wickman and the Prosecutor's Office's opposition to Roberts's motion to amend as a motion to dismiss, dismiss all claims against Wickman and John Doe Prosecutor.

An Order consistent with this Opinion will enter.


Dated: August 19, 2019                          /s/ Gordon J. Quist
                                              GORDON J. QUIST
                                              UNITED STATES DISTRICT JUDGE